UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2023 DEC 18 P 2:57
CLERK OF COURT

Donald F. Evans, Jr.,

    Plaintiff,

V.

Case No. **23-C-1690**

Gilbert D. Steffanides, Kira D. Labby,

and Andrea M. Smits,

    Defendants.

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983

**NOW COMES** the Plaintiff, and as a cause of action against the above named Defendants, hereby pleads the following:

### NATURE OF THE CASE

(1) This is a Civil Complaint brought forth by the Plaintiff pursuant to 42 U.S.C. §1983, alleging Defendants were Deliberately Indifferent to his Serious Medical Needs in violation of rights guaranteed him under the Eighth Amendment to the U.S. Constitution, and that they further committed Medical Malpractice under Wisconsin state law, for which he seeks compensatory and punitive damages, along with costs incurred as a result of bringing forth this action.

## JURISDICTION

(2) The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. §1367.

## VENUE

(3) The U.S. District Court for the Eastern District of Wisconsin is the proper venue for this action pursuant to 28 U.C.S. §1391(b).

## EXHAUSTION

(4) Plaintiff has exhausted all of his available administrative remedies.

## PARTIES

(5) The Plaintiff was at all relevant times a prisoner confined within the Wisconsin Department of Corrections (DOC) at Red Granite Correctional Institution (RGCI), P.O. Box 925 - RGCI, Red Granite, WI. 54970-0925; although, he is currently incarcerated at Oakhill Correctional Institution (OCI), 5212 HWY M, P.O. Box 938, Oregon, WI. 53575.

(6) The Defendants in this case are, and were at all relevant times, Gilbert D. Steffanides - a Medical Doctor/Advanced Care Provider (ACP) at RGCI, Kira D. Labby - a Medical Doctor/Advanced Care Provider (ACP) at RGCI, and Andrea M. Smits - an Advanced Practice Nurse Prescriber (APNP) at Fond du Lac Regional Clinic, 608 W. Brown St., Waupun, WI. 53963.

(7) Defendants acted under color of state law, and are being sued in their individual capacities.

## FACTS

(8) In August of 2020 the Plaintiff suffered multiple gunshot wounds to both of his legs and feet, seven total; and, although he underwent surgery, the injury resulted in bullet fragments being left in his legs and Plaintiff being left with serious nerve damage.

(9) Not long after the surgery, supra (8), Plaintiff's left thigh began to swell, and developed into an infection with a draining wound.

(10) Consequently, on 10-15-20, an additional surgery was performed to remove the bullet fragments from Plaintiff's leg and administer an excision of the draining tract.

(11) Subsequent to those events, supra (8)-(10), in the summer of 2022, Plaintiff began a prison sentence within the Wisconsin DOC and was placed at RGCI to serve that sentence.

(12) On 6-1-22, Plaintiff submitted a Health Service Request (HSR) to RGCI's Health Service Unit (HSU) stating: "I have severe nerve damage in my left leg and you guys took my tylenol from out of the blue bag that I brough[t] from dodge C. I am in pain[,] unbearable pain now. Can I please get tylenol." (brackets added), to which nurse Jodi Fryczynski responded that he was scheduled to be seen by the Advanced Care Provider (ACP) (i.e., Defendant Steffanides or Defendant Labby) on 6-24-22, tentatively.

(13) On 6-7-22, Plaintiff submitted another HSR stating: "I have severe nerve damage in my left leg, my leg has swollen up and it's getting harder to put weigh[t] on it[.] I also have to climb stairs everyday. Can you please help me. My meds [are] not working." (brackets added), to which nurse Jodi Fryczynski responded: "Nursing Sick Call yesterday, you are scheduled for f/u nursing."

(14) On 6-7-22, Plaintiff was seen by Austin Korman who noted the following, in pertinent part, on an Assessment Form: "Patient sent to HSU via wheelchair from H unit officer due to emergent

Page 3 of 16

leg pain. [ ]. He walked into HSU with a slow limping gait and wide based gait (duck like) walk to left leg. [ . . .]. Left thigh is also swelling into knee. [ ]. Due to significant swelling and history Dr. Labby was consulted and ordered rest, ice, elevation and to continue celecoxib and tylenol."

(15) On 6-13-22, Plaintiff submitted another HSR stating: "My left leg is killing me and it's starting to lump up, I could feel three lumps, the pain is unbearable and I think the nerve pill[] I am on is not working." (brackets added), which nurse Austin Korman acknowledged receipt of on 6-14-22 and checked a box on the HSR form which stated Plaintiff was "Scheduled to be seen in HSU".

(16) On 6-14-22, Plaintiff was seen by nurse Cierra V. Bretzel, who noted he continued to limp on his left leg, and that: "Patient reports chronic pain 7/10 with only mild improvement in symptoms of pain and swelling in left knee after celecoxib, acetaminophen, ice/heat, diclofenac, and ace wrap. Pain is constant, sharp, throbbing, does not radiate. [ . . .]. Patient reports pain and stiffness with flexion. left knee tender to touch."

(17) On 6-27-22, Plaintiff was examined by Defendant Steffanides, at which time he told him of the unbearable pain he was in and the limited range of motion he had with his left leg, resulting in Defendant Steffanides ordering physical therapy for Plaintiff.

(18) On 7-10-22, Plaintiff submitted another HSR stating in part: "Can I please get a x-ray on my left leg, something is definitely wrong with it! Please. Thank you!", which A. Thompson, RGCI's Health Services Manager (HSM), acknowledged receipt of on 7-11-22.

(19) On 7-11-22, Plaintiff was seen by nurse William Borgen, who noted: "Patient is concerned as this area he feels has come up rather quickly and he would like a XRay of the area. [ ]. He is

Page 4 of 16

Case 1:23-cv-01690-WCG   Filed 12/18/23   Page 4 of 16   Document 1

given hydrocortisone to apply to the area - he is advised to stop if it gets worse with use of the hydrocortisone. He is advised to alert HSU should the area grow larger, become red/inflammed, open up, or change in any significant way. We will refer the patient to the provider for further evaluation of the area."

(20) On 7-19-22, Plaintiff submitted another HSR stating: "I seriously need some type of medical attention on my left leg. I believe the rod in it has shifted, I am in constant pain everyday, some days are better than others. Help!! me please.", to which nurse Jodi Fryczynski responded, on 7-20-22, "You are being seen by the provider today."

(21) On 7-20-22, Plaintiff was examined by Defendant Steffanides, at which time he told him of the unbearable pain he was in, that his condition had worsened to him being unable to bend his left leg past 90 degrees, that his skin was getting darker in his left thigh area and the swelling continued, resulting in Defendant Steffanides ordering an X-ray.

(22) On 7-21-22, the X-ray was performed on Plaintiff, finding that: "No acute fracture or dislocation is seen. The hip joint is grossly intact. Femoral rod is intact, across stable, old healed fracture." That is, there existed another cause for Plaintiff's condition, supra (21). However, none of this was communicated to Plaintiff.

(23) On 7-31-22, Plaintiff submitted another HSR stating: "I would like to know what's going on with my X-rays and what are we going to do about my leg.", to which nurse Jodi Fryczynski responded, on 8-1-22, that he was scheduled to be seen by the ACP (i.e., Defendant Steffanides or Defendant Labby) on 8-15-22, tentatively.

(24) The pain Plaintiff experienced was so great that he believed the bone in his left leg was

Page 5 of 16

Case 1:23-cv-01690-WCG   Filed 12/18/23   Page 5 of 16   Document 1

trying to pierce through his skin; and, on 8-2-22, he submitted another HSR stating: "The spot on my left leg where the bone is trying to come through the skin starting to badly hurt and I need some medical attention a.s.a.p. Thank you!!".

(25) On 8-3-22, as a result of Plaintiff's HSR, supra (24), he was seen by nurse Austin Korman, who noted: "Plaintiff states his leg is still swollen and the hard dark area is burning. [ . . .]. Left leg is more swollen just above the knee and feels like some excess fluid build up. [ ]. Left leg has full extension, but unable to bend knee past 90 degrees due to pain and stiffness. [ ]. Due to large hard hyper pigmented are Dr. Labby was consulted and does not feel it is an infection process."

(26) On 8-8-22, as a result of the above, supra (24)-(25), Plaintiff was examined by Defendant Steffanides, who informed him that he had multiple bullet fragments in his leg, but the X-ray was otherwise normal, that his condition did not indicate any sign of infection, and that his same course of treatment (tylenol, nsaids, and topical cream) would continue, despite the fact that he remained in pain so great it felt like his bone was trying to pierce through his skin.

(27) On 8-31-22, Plaintiff submitted another HSR stating: "This thing on my left leg has busted open and been draining for a week now, I would like to see somebody as soon as possible. Thank you!"

(28) On 9-1-22, Plaintiff was seen by nurse Jodi Fryczynski, who noted: "Patient said has a 'big bubble' on the left side of his leg that opened about a week ago and was draining pus. Patient reports that area being much smaller than when it first opened. Patient does have a open area on the left upper lateral leg with hyperpigmentation and induration surrounding the area. Patients leg was warm to the touch and painful upon palpation. Writer able to get a small amount of yellow/white

pus from the area. Writer cleansed the area with wound cleanser and applied gauze and a Tegaderm. Provider updated and ordered Doxycycline 100mg twice daily for 10 days. Patient to come to HSU for daily dressing changes."

(29) On 9-5-22, Plaintiff was seen by nurse Austin Korman, who noted: "Patient seen for wound care. There continues to be copious amounts of drainage. Light green drainage has a slight sweet smell to it and patient is currently on doxycycline antibiotic. Due to drainage and odor on call Dr. English was notified and added ciprofloxacin antibiotic to current antibiotic regimen."

(30) On 9-8-22, as a result of Plaintiff's unimproved condition, supra (29), he was examined by Defendant Labby, who noted: "There is an opening about 1 cm in diameter in the lateral midthigh, surrounded by mild induration and TTP, and little heat. There is a large amount of thick yellowish drainage as well as some serosang staining on the dressing material. There's no obvious fluctuance or pus pocket - the wound appears to open down into normal - appearing subQ tissue without obvious abscess underneath, no material expressed with pressure."; and, consequently, she ordered an ultrasound be performed, that the wound be swabbed, and that he continue taking the prescribed antibiotics for the same.

(31) On 9-13-22, an ultrasound was performed on Plaintiff, with the following Results: "Focused ultrasound of the left lateral thigh region shows an underlying fluid collection extending into the skin compatible with a wound. There is an adjacent underlying subcultaneous edema that likely extends deeper into the soft tissue and increase echogenicity of the adjacent fat. No foreign bodies seen."; and, Conclusion: "Nonspecific fluid collection in the left lateral thigh which can be related to edema, seroma. Abscess formation cannot be ruled out."

(32) Both Defendants Steffanides and Defendant Labby were made aware of the results and conclusion of the ultrasound, supra (31).

(33) The antibiotics Plaintiff was prescribed, supra (28)-(29), had not been effective, so he was prescribed another: Levaquin for 7 additional days; meanwhile, his leg continued to drain yellowish/green pus, and, it was indeed infected with an abscess.

(34) On 9-22-22, Plaintiff was examined by Defendant Steffanides, at which time he noted that Plaintiff had two open wounds to his leg: "open drainage sites x 2", a "lump lateral thigh", and that there was "yellow/green fluid drainage from sites", which he determined to be a "cellulitis/abscess of thigh, continual drainage", and acknowledged that Plaintiff had been on Levaquin for 7 days and ordered it "for another 7" days, along with a "Consult to General Surgery".

(35) On 9-21-22, Defendant Steffanides submitted an "OFF-SITE SERVICE REQUEST AND REPORT (Form DOC-3001), on which he stated Plaintiff's Diagnosis was a "Chronic leg abscess, non-healing"; and, indicating the urgency, he requested "Consultation, evaluation and treatment recommendations (ASAP)" with "General Surgery", but made Plaintiff's appointment with Defendant Smits who was not a surgeon, not authorized to perform surgery on Plaintiff, and was not even a doctor/physician, but rather was only an Advanced Practice Nurse Prescriber (APNP); i.e., he referred plaintiff to medical staff less qualified than him to diagnose and/or treat the chronic and infectious wounds to Plaintiff's leg.

(36) On 9-23-22, Plaintiff was seen by nurse Holly Gunderson, who noted that: "Patient seen at the request of staff for a wound on his left thigh. Staff report the wound drains a purulent green drainage in a moderate amount." [ ]. [ ]. Staff were indicating that they felt maybe the risk for

pseudomonas . . ."

(37) On 9-27-22, Plaintiff was taken to Waupun General hospital, at which he was examined by Defendant Smits who noted the abscess on Plaintiff's left thigh, and that "The area opened up in the end of August. He has been on doxycycline, ciprofloxacin, and levaquin. He is currently taking levaquin now. [ ]. [ ]. Associated symptoms include drainage.", at which time she ordered that Plaintiff continue taking levaquin, stated that her "Recommendations are to have patient shower daily with wounds open then report to HSU to have a dry dressing applied. Area should be cleaned with hibiclens and NS."

(38) On 10-10-22, Defendant Steffanides submitted an "OFF-SITE SERVICE REQUEST AND REPORT (Form DOC-3001), on which he again stated Plaintiff's Diagnosis was a "Chronic leg abscess, non-healing", at which time he requested a "Follow up" with Defendant Smits and had the follow up date set for 10-25-22.

(39) On 10-20-22, Defendant Steffanides submitted an "OFF-SITE SERVICE REQUEST AND REPORT (Form DOC-3001), on which he again stated Plaintiff's Diagnosis was a "L leg abscess, non-healing", at which time he requested a "Follow up" with Defendant Smits and had the follow up date set for 12-22-22.

(40) On 10-25-22, Plaintiff was again taken to Waupun General hospital, at which he was examined by Defendant Smits who again noted the abscess on Plaintiff's left thigh, and that "The area opened up in the end of August. He has been on doxycycline, ciprofloxacin, and levaquin. He is no longer taking antibiotics. [ ]. [ ]. Associated symptoms include drainage."; and, she further stated "At this time the abscess appears to be resolving. There is minimal drainage.", and stated that

her "Recommendations are to have patient shower daily with wounds open then report to HSU to have a dry dressing applied. Recommended that he leave it open to air whenever possible. Area should be cleaned with hibiclens and NS."

(41) As Defendant Smits noted, supra (40), at that point Plaintiff was no longer receiving antibiotics, nor any other treatment to cure the infectious wounds to his leg.

(42) The dressing changes Defendants Smits, Labby, and Steffanides repeatedly prescribed, and the creams they prescribed, supra (28)-(30), (37), (40), and infra (43)-(46), were not treatments capable of curing, or designed to cure, an infection, but were treatments designed to contain such an infection while the patient is undergoing treatment designed to cure the infection.

(43) On 11-28-22, Plaintiff submitted an HSR stating: "The bubble on the back of my leg is now draining as well." That is, plaintiff's condition was getting worse, not better.

(44) On 11-29-22, as a result of that HSR, supra (43), Plaintiff was examined by Defendant Steffanides who again concluded he had an "abscess/cellulitis with drainage", but only ordered "continued dressing changes, abx, follow up with surgery"; i.e., "follow up" with Defendant Smits who was not a surgeon.

(44) Each time Defendant Steffanides made an "OFF-SITE SERVICE REQUEST AND REPORT (Form DOC-3001), supra (35), (38), and (39), he knew he was having Plaintiff be seen by Defendant Andrea Smits who was not a surgeon, not qualified to perform surgery on Plaintiff, and was not even a doctor/physician, but rather was only an Advanced Practice Nurse Prescriber (APNP); i.e., he was continually referring plaintiff to medical staff even less qualified than him to diagnose and/or treat the chronic and infectious wounds to Plaintiff's leg.

(45) On 12-13-22, Plaintiff submitted an HSR stating: "Why you guys stop calling me to change the gauze on my leg, and it's still draining."

(46) On 12-22-22, Plaintiff was again taken to Waupun General hospital, at which he was examined by Defendant Smits who again noted the abscess on Plaintiff's left thigh, and that "The area opened up in the end of August. He has been on doxycycline, ciprofloxacin, and levaquin. Since the end of October he has been off antibiotics. He now has a new area of drainage at the posterior aspect of the left thigh. Associated symptoms include drainage."; and, she further stated that she "Recommend cleocin cream to be applied to both wounds BID after cleansing. Recommendations are to have patient shower daily with wounds open then report to HSU to have a dry dressing applied. Area should be cleaned with hibiclens and NS. [ ]. [ ]. May require surgical exploration of wound."

(47) On 1-5-23, Plaintiff submitted an HSR stating: "I am back, not being able to fully bend my left leg, the leg that has been draining for 5 months now."

(48) On 1-5-23, Defendant Labby submitted an "OFF-SITE SERVICE REQUEST AND REPORT (Form DOC-3001), on which she also stated Plaintiff's Diagnosis was a "Left leg abscess", at which time she again requested a "Follow up" with Defendant Smits and had the follow up date set for 2-28-23; although, Defendant Labby knew Defendant Smits was not a surgeon, not qualified to perform surgery on Plaintiff, and was not even a doctor/physician, but rather was only an Advanced Practice Nurse Prescriber (APNP); i.e., she was referring plaintiff to medical staff less qualified than her to diagnose and/or treat the chronic and infectious wounds to his leg.

(49) On 1-17-23, Plaintiff was examined by Defendant Steffanides, at which time he noted that Plaintiff had "Yellow drainage from wound . . . left knee wound drainage, now since September 2/ 2022 . . . still serosanguineous yellow fluid, daily".

(50) On 2-14-23, Plaintiff submitted another HSR stating: "How do you all expect me to change the gauze on my leg if you guys not giving me any. I need some more 3x3 or 4x4, I am running out. Thank you."

(51) On 2-28-23, Plaintiff was once again taken to Waupun General hospital, at which he was examined by Defendant Smits who again noted the abscess on Plaintiff's left thigh, and that "The area opened up in the end of August. He has been on doxycycline, ciprofloxacin, and levaquin. Since the end of October he has been off antibiotics. The area of drainage at the posterior aspect of the left thigh is healed. The left lateral thigh continues to drain but is less. He changes dressing daily and is applying cleocin cream."; and, she further stated that she "Recommend cleocin cream to be applied to the wound BID after cleansing. Recommendations are to have patient shower daily with wounds open then report to HSU to have a dry dressing applied. Area should be cleaned with hibiclens and NS."

(52) Defendant Smits note that one of Plaintiff's wound had healed, supra (51), was false; neither of his draining wounds healed until after he was transferred to Oakhill Correctional Institution, admitted to the Emergency Department (ED) of U.W. Hospital and Clinics and subsequently underwent surgery for the chronic and infectious wounds to his leg, infra (56)-(57).

(53) In the interim of the aforementioned, supra (51)-(52), the chronic and infectious wounds to Plaintiff's leg continued to drain pus.

(54) On 4-27-23, Plaintiff was seen by nurse Cindy Barter, who noted: "Pt arrives very frustrated that another summer is upon us and he is still having to deal with daily and more often left thigh dressing changes. 4x4's removed at this time with large amount of purulent drainage. he states that he has been to Waupon 4 times now and states that they will not see him anymore. pt feels something needs to be done and is now very discouraged. Will schedule ACP visit for follow up. Site remains the same and drainage is heavy at times. [ ]. Pt states that his plan from ortho is to just continue to dress the site and it might heal on its own. Pt is not ok with this plan as it is not healing."

(55) The following month, May 2023, Plaintiff was transferred to Oakhill Correctional Institution (OCI); and, on 5-31-23, upon being examined by OCI Dr. Smith, he was admitted to the Emergency Department (ED) of U.W. Hospital and Clinics.

(56) On 6-1-23, the very next day thereafter, supra (55), and Plaintiff underwent surgery for the chronic and infectious wounds to his leg, which consisted of "Left femur IMN hardware removal, left thigh, femur and knee joint irrigation and debridement, antibiotic bead placement."

(57) On 6-6-23, Plaintiff underwent an additional surgery for the chronic and infectious wounds to his leg, which consisted of "Left femur I&D, knee arthroscopy, antibiotic cement."

(58) Plaintiff remained hospitalized for 12 days; and, the U.W. Hospital and Clinic surgeons who treated him told him that had he not received surgery when he did it was very likely that his leg would have had to be amputated, and that his condition was "chronic osteomyelitis, abscess, and draining sinus" to his left leg.

(59) Plaintiff's leg remained draining infectious pus for 9 months (+), from August 2022 to May

2023, while Defendants Steffanides, Labby, and Smits continued in a course of treatment which was shown to be utterly ineffective to treat the infection.

(60) As a result of Defendants' Steffanides, Labby, and Smits actions and omissions, supra (8)-(59), Plaintiff suffered severe limitations to his daily activities, unbearable physical pain, psychological pain, depression and stress, and underwent other undue suffering; and, it nearly cost him his leg.

(61) There was a cure for Plaintiff's chronic and infectious condition; and, Defendants, being incapable of providing curative treatment themselves, should have had Plaintiff treated by physicians and/or specialist in infectious disease who were more capable than themselves. Instead, they continued in a course of treatment known to be ineffective; and, in the case Defendants Steffanides and Labby, they actually referred Plaintiff to medical staff less capable and qualified than themselves, i.e., Defendant Smits.

(62) But for the Divine Intervention which resulted in Plaintiff's transfer to OCI and admittance to the Emergency Department of U.W. Hospital and Clinics, Defendants' actions and/or omissions would have cost plaintiff his leg. Plaintiff's leg has since healed without further infection.

## CAUSES OF ACTION

(63) Plaintiff has suffered serious physical, mental, and emotional injuries as a proximate result of Defendants' actions and/or omissions as pleaded above, supra (8)-(62), which constitute the following offenses:

(i) **1st Cause of Action: DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED.** As pleaded above, supra (8)-(62), Plaintiff had a serious medical need for: (1) a cure for

the chronic infection to his left leg; and, (2) effective pain management in the meantime. Defendants Steffanides, Labby, and Smits were aware his serious medical needs; although, despite their awareness they failed to take appropriate action to ensure his serious medical needs were met, rendering them deliberately indifferent thereto, in violation of the right guaranteed him under the Eighth Amendment to the U.S. Constitution to be free from Cruel and Unusual Punishment;

(ii) **2nd Cause of Action: MEDICAL MALPRACTICE/NEGLIGENCE (WIS JI-CIVIL 1023)**. In treating Plaintiff's condition, Defendants Steffanides, Labby, and Smits, supra (8)-(62), were required to use the degree of care, skill, and judgment which reasonable nurses and doctors who are in general practice would exercise in the same or similar circumstances, having due regard for the state of medical science at the time Plaintiff was treated and they failed to do so, which constitutes negligence.

## JURY TRIAL DEMAND

(64) Evans demands a trial by jury.

## RELIEF SOUGHT

(65) As proximate result of Defendants' actions and/or omissions as pleaded above, supra (8)-(62), Plaintiff has suffered physical, emotional, and mental injury, some of which will be lifelong, for which the following relief is sought:

(i) Compensatory Damages in an amount to be determined by the jury;

(ii) Punitive Damages in an amount to be determined by the jury; and,

(iii) All costs and fees incurred as a result of bringing forth this civil action, including attorney fees

should counsel appear on Plaintiff's behalf.

## DECLARATION

Pursuant to 28 U.S.C. §1746, under penalty of perjury, I do hereby attest that the above foregoing Facts, supra (8)-(62), are true and correct and are based on my own personal knowledge, except as to those matters stated upon information and belief, and as to those matters I believe the same to be true.

Date: 12/6/23
Signed: Donald Evans

Donald F. Evans, Jr., #707717

P.O. Box 938 - OCI

Oregon, WI. 53575